OPINION
{¶ 1} Appellant Nicholas Brooks appeals the May 10, 2007 Judgment Entry entered by the Licking County Court of Common Pleas, Juvenile Division, which adjudicated him a delinquent child and committed him to the Ohio Department of Youth Services. Appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On October 4, 2006, a Complaint was filed in the Licking County Court of Common Pleas, Juvenile Division, charging Appellant with one count of rape, a first degree felony, if committed by an adult, in violation of R.C. 2907.02(A)(1)(b); and one count of gross sexual imposition, a third degree felony if committed by an adult, in violation of R.C. 2907.05(A)(4). Appellant appeared before the trial court for arraignment on November 2, 2006, at which time he entered a denial. Appellant was placed under court supervision which included house arrest, random drug and alcohol screens, and no contact orders.
 {¶ 3} On January 23, 2007, the trial court conducted a competency determination of the victim, four year old Gavri Cox. Following questioning by the prosecutor, defense counsel, and the trial court, the trial court found Gavri competent to testify. The trial court immediately proceeded to the adjudicatory portion of the matter.
 {¶ 4} The following evidence was adduced at trial. The prosecutor began his questioning of Gavri by asking her if she knew why she was in court that day and whether she knew Appellant. Gavri responded "No" to both questions. When the prosecutor presented Gavri with an anatomically correct doll, the child pointed to the appropriate parts when asked to locate the doll's eyebrows, nose, mouth, arms, bottom, *Page 3 
and "girl parts". Gavri recalled swimming in a pool located in Appellant's backyard. When asked if she used the bathroom in Appellant's house, Gavri answered, "No". The prosecutor reminded her about the need to tell the truth, and asked her again if she remembered going into Appellant's house to use the bathroom. Gavri stated Appellant did not go into the bathroom with her. Gavri pointed to the vaginal area on the doll to show where Appellant had touched her. On cross-examination, Gavri stated when she went into the house to use the bathroom, Tracy Brooks, Appellant's mother, helped her take her down her bathing suit in order for her to use the toilet. Gavri stated Appellant was outside with the other children.
 {¶ 5} James Lucas, Gavri's stepfather, testified, around August 10, 2006, he and Mandy Cox Lucas, Gavri's mother and his ex-wife[1], were outside in their backyard with their three children. James was taking care of general yard work and Mandy was sitting on the porch. Their three children were playing in a small plastic pool in the backyard of Appellant's family's home. Appellant and his two younger sisters were also playing in the pool. Mandy went inside the house to answer the telephone, and came out shortly thereafter to advise James he had a business call. After Tracy Brooks, Appellant's mother, indicated the children were okay, he went into the house.
 {¶ 6} When James Lucas came back outside, he did not see the children. He proceeded across the backyard to the Brooks' home. At that point, he saw Gabriel and Gwena, his two other children, and the two Brooks girls exiting the house through the sliding door. Lucas approached the children, questioned Gabriel about why he went inside after he had been instructed otherwise. Lucas neared the sliding glass door, and *Page 4 
observed Appellant exiting the bathroom, followed by the Gavri. Lucas did not see Tracy Brooks in the kitchen area. Lucas recalled when Appellant walked out of the house and saw Lucas, Appellant reacted with a look of shock, "kind of the deer-in-headlight look". Tr. at 66. Appellant told Lucas the children needed to use the restroom. Lucas questioned Gavri about why she was in the house when she had been told not to do so. Gavri returned to playing with the other children. Lucas continued with his yardwork. Later that afternoon, after the children had finished swimming, James and Mandy were removing the children's wet swimsuits. At that time, Gavri told her parents her girl parts hurt. James explained Gavri had just finished potty training and would sometimes get a rash from not properly cleaning herself. Mandy checked her daughter, but did not notice a rash or anything of that nature.
 {¶ 7} Jennifer Cloud testified Mandy Cox Lucas is her husband's cousin. During the summer of 2006, Cloud babysat for Gavri and Gwena on Fridays and Saturdays when Mandy was working. Cloud recalled she was watching the girls on Saturday, August 12, 2006, and her children, Gavri, and Gwena spent the afternoon outside in the pool. After dinner, Cloud gave the children showers and put on their pajamas. Later that evening, the children were playing in the living room when Gavri walked into the kitchen. Cloud could tell by the way Gavri was acting the girl needed to tell her something. Cloud asked Gavri what was wrong, and Gavri stated her girl parts were hurting. Gavri did not answer when Cloud inquired as to why her girl parts were hurting. Cloud asked Gavri if she wanted her (Cloud) to check the area. Gavri left the kitchen and went into the other room. *Page 5 
 {¶ 8} Gavri returned to the kitchen a short time later and again told Cloud her girl parts were hurting. Cloud asked Gavri if anyone other than her parents had touched her girl parts, to which Gavri responded, "Yes." Gavri told Cloud Nick had touched her. Gavri also told Cloud Nick was a boy who lived next door behind her mother's house, and the incident happened "the other day" while her parents were at home. Gavri explained she and the other children were outside playing. She had to go to the bathroom, so she went into Appellant's house. When she was finished, Appellant touched her. Cloud ceased her questioning of Gavri, and the girl returned to the living room. Cloud immediately told Mandy Cox Lucas.
 {¶ 9} Mandy Cox Lucas testified, on the day of the incident, she was sitting outside on the back porch while Gavri and her siblings played in a wading pool with Appellant's younger sisters. James Lucas was doing yard work at the time. Mandy stated she went into the house to wash dishes or answer the phone, and told James Lucas to keep an eye on the children. Shortly thereafter, James came into the house. Mandy asked James what the children were doing, and he replied they were still in the pool. When Mandy looked out, the children were no longer in the yard. She told James to go over to the Brooks' residence and tell the children to come back outside. Mandy observed James walk across the yard and onto the Brooks' porch, the children started to exit the house. The children played for another fifteen or twenty minutes and then returned to the home for the evening.
 {¶ 10} On the following Saturday, Mandy went to Cloud's house to pick up Gavri and Gwena. When she arrived, Cloud asked her, "Who's Nick?". Mandy replied, "A neighbor boy, why?". Cloud then advised her of the sexual allegation regarding *Page 6 
Appellant. While driving home, Mandy asked Gavri questions about what Cloud had told her (Mandy). Gavri's answers prompted Mandy to contact the Licking County Sheriffs Department for advise on how to handle the situation.
 {¶ 11} Leslie Dieterich, a nurse practitioner who works for Licking Memorial Hospital in the pediatric department as well as Kids' Place, testified Kids' Place is a special facility established by Licking Memorial Hospital to conduct physical and sexual evaluations. Dieterich detailed the evaluation procedure of a child who comes in with a sexual abuse allegation. She explained a sexual abuse evaluation does not always produce physical evidence as the genital area of young girls is very vascular, and heals very quickly. Dieterich added, in her experience which included over 100 cases, only about 15 to 20% of the young girls she had examined showed physical evidence of abuse.
 {¶ 12} Dieterich testified as to the procedure she followed in conducting her evaluation of Gavri. When she asked Gavri why she was there, Gavri responded, "Because Nick touched my girl parts." Gavri then detailed the incident to Dieterich. She told the nurse Appellant had touched her with his hands, indicating he put his whole hand inside her. Gavri stated she had on her bathing suit, but it was down so she could use the bathroom. Gavri indicated the incident occurred at Appellant's house in the bathroom. Gavri told Dieterich she asked one of Appellant's sisters to get her father, but the girl did not. Gavri recalled she saw Appellant's "boy parts", but did not touch them. When asked if anyone else had ever touched her girl parts, Gavri replied, "Yes", stating Cassie and Amber, Appellant's sisters, had also touched her girl parts but not on *Page 7 
the same day, but indicated she had her bathing suit on when this occurred. Gavri told Dieterich she observed Appellant touch Amber and Cassie.
 {¶ 13} Following the interview, Dieterich conducted a physical examination of Gavri. Dieterich performed a head to toe evaluation, including a genital examination. She found no physical evidence which was diagnostic. Dieterich added Gavri did have some irregular appearing areas on her hymen, but those irregularities were not specific to being injured or the result of a touching. Based upon her examination of Gavri, Dieterich made a diagnosis of child sexual abuse.
 {¶ 14} Det. Chris Barbuto, a detective with the Licking County Sheriffs Office, testified, on August 15, 2006, he was the on-call detective and received a phone call at his home from Dep. Murphy, the patrol deputy. Dep. Murphy told Barbuto she had spoken with the Lucas family and they had made sexual abuse allegations. The detective contacted Mandy Cox Lucas, and after being assured the children were safe, advised her to bring the children into the office the following morning. Det. Barbuto and Heidi Ballengee, the social worker from children's services assigned to the case, initially spoke with Mandy and James Lucas. The parents informed the detective and social worker how the allegations came to light. After Det. Barbuto and social worker Ballengee interviewed Gavri Cox, they set up an appointment with the Kids' Place.
 {¶ 15} After Gavri's evaluation at the Kids' Place, the detective and social worker proceeded to Watkins Middle School to interview Appellant. The school principal was also in attendance during the interview. Det. Barbuto commenced the interview with a casual conversation to relax Appellant and to ascertain basic information. The detective then explained to Appellant the actual purpose of the interview. Upon learning of the *Page 8 
allegations, Appellant slammed his hand on the table, and became very mad. The detective indicated Appellant was very emotional during the interview, crying at some points. Det. Barbuto recalled, Appellant, upon learning of the allegations, stated he did not want to go to "juvie" and denied ever being sexually inappropriate with Gavri. On cross-examination, Det. Barbuto stated he did not interview Tracy or Ray Brooks as he had been advised by their attorney the family would not provide any further statements.
 {¶ 16} At the conclusion of Det. Barbuto's testimony, the State rested its case. Appellant made an oral Juv. R.29 Motion for Acquittal, which the trial court denied. Thereafter, Appellant presented his case, calling Tracy Brooks as his only witness.
 {¶ 17} Tracy Brooks testified she purchased the small swimming pool for her children on August 1, 2006. On August 9th, James Lucas spent the day at the Brooks' residence, repairing their truck. Mrs. Brooks recalled, at Lucas' request, they rented a tool for the repair on August 9, and returned the equipment the following morning. She added Appellant was with Lucas while Lucas worked on the truck. On the morning of August 10, 2006, Lucas appeared at their residence with Gavri, Gabriel, and Gwena, who immediately began running around with the Brooks' girls. Lucas and Appellant were sitting in the living room watching Ray Brooks play a video game. Tracy was upstairs in the loft area of the house, and could hear the five young children running through the kitchen, headed toward the bathroom. After she heard the bathroom door, Ray Brooks and Lucas both yelled at the children at the same time. The children subsequently went outside, and were planning to change and play in the pool. However, one of Gavri's siblings broke Amber Brooks' scooter, and Lucas made Gavri, *Page 9 
Gabe and Gwena, return to their house. Tracy Brooks stated she never saw the children the rest of the day. Tracy Brooks recalled the one time Gavri and the other children were in the pool, Gavri asked to use the bathroom, so Tracy showed the girl to the bathroom, and assisted her in taking down her bathing suit. Tracy closed the door and went to check on the other children. Appellant was outside at the time and not anywhere near the bathroom.
 {¶ 18} Appellant rested and the parties presented closing statements. On the record, the magistrate found the State had proven beyond a reasonable doubt Appellant engaged in sexual conduct with Gavri as alleged in count one of the Complaint, and the State also proved beyond a reasonable doubt Appellant had sexual contact with Gavri as alleged in count two of the Complaint. The magistrate indicated his intent to recommend Appellant be adjudicated a delinquent child for the offenses of rape and gross sexual imposition. The magistrate postponed disposition, ordering a sex offense evaluation and a pre-disposition report. Defense counsel requested Findings of Fact and Conclusions of Law.
 {¶ 19} On January 31, 2007, Appellant filed objections to the magistrate's report as well as a written request for Findings of Fact and Conclusions of Law, which the magistrate filed on February 2, 2007.
 {¶ 20} The matter came on for dispositional hearing on April 23, 2007. Appellant called Dr. William Friday, a licensed psychologist hired by Appellant's parents to conduct an independent psychological evaluation. Dr. Friday provided the trial court with a written report. Dr. Friday concluded Appellant would be very amenable to treatment within the community as opposed to incarceration or lock up. The doctor *Page 10 
described the tests he used to evaluate Appellant and the findings which lead to that conclusion. The trial court also received a psychological evaluation completed by Dr. Cecil Miller with the court's Family Intervention Services as well as a report from T. J. Schneider, the probation officer who is the court's sex offender specialist.
 {¶ 21} Via Decision filed April 23, 2007, the magistrate recommended Appellant be committed to the Ohio Department of Youth Services for a minimum period of one year, and a maximum period not to exceed his twenty-first birthday on count one; and a minimum period of six months, and a maximum period not to exceed his twenty-first birthday on count two. The magistrate found Appellant was not amenable to treatment within the community and it was in the best interest of Appellant and the community placement that DYS be made. The magistrate filed his Decision on April 23, 2007. The trial court approved and adopted the Magistrate's Decision and entered such as the order of the court via Judgment Entry filed April 24, 2007.
 {¶ 22} It is from this adjudication and disposition Appellant appeals, raising the following assignments of error:
 {¶ 23} "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTION TO THE COMPETENCY OF GAVRI COX AND PERMITTING HER TO TESTIFY, AND THEREBY VIOLATED APPELLANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
 {¶ 24} "II. THE TRIAL COURT ERRED IN ADMITTING HEARSAY STATEMENTS WHICH WERE NOT COVERED BY ANY RECOGNIZED EXCEPTION UNDER THE RULE OF EVIDENCE. *Page 11 
 {¶ 25} "III. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT OF CONFRONTATION AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY IMPROPERLY ADMITTING HEARSAY STATEMENTS OF THE ALLEGED VICTIM.
 {¶ 26} "IV. THE TRIAL COURT ERRED IN ADMITTING THE EXPERT TESTIMONY OF LESILE [SIC] DIETERICH AS IT IMPROPERLY BOLSTERED THE CREDIBILITY OF GAVRI COX, THUS VIOLATING APPELLANT'S FIFTH AND FOURTEENTH AMENDMENTS RIGHTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
 {¶ 27} "V. THE TRIAL COURT ERRED IN ALLOWING EXPERT TESTIMONY WHEN THE PROPER FOUNDATION FOR THE RELIABILITY OF THE EXPERT'S OPINION WAS NOT ESTABLISHED, THUS VIOLATING APPELLANT'S FIFTH AND FOURTEENTH AMENDMENTS RIGHTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
 {¶ 28} "VI. THE TRIAL COURT VIOLATED APPELLANT'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION BY ENTERING VERDICTS OF GUILTY, AS THE JURY'S [SIC] VERDICT WAS AGAINST THE MANIFEST WIDTH OF THE EVIDENCE.
 {¶ 29} "VII. THE TRIAL COURT ERRED BY UNREASONABLY HOLDING APPELLANT NOT AMENABLE TO REHABILITATION IN THE COMMUNITY." *Page 12 
 I {¶ 30} In his first assignment of error, Appellant challenges the trial court's finding Gavri Cox was competent to testify and permitting her to do so.
 {¶ 31} Our standard of review is abuse of discretion. The term "abuse of discretion" suggests more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Apanovich (1987), 33 Ohio St.3d 19, 22.
 {¶ 32} Evid. R.601(A) provides:
 {¶ 33} "Every person is competent to be a witness except:
 {¶ 34} "(A) Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 35} "Competency under Evid.R. 601(A) contemplates several characteristics. See State v. Frazier (1991), 61 Ohio St.3d 247, 251,574 N.E.2d 483, 487, certiorari denied (1992), 503 U .S. 941,112 S.Ct. 1488, 117 L.Ed.2d 629. Those characteristics can be broken down into three elements. First, the individual must have the ability to receive accurate impressions of fact. Second, the individual must be able to accurately recollect those impressions. Third, the individual must be able to relate those impressions truthfully. See, generally, 2 Wigmore on Evidence (Chadbourn Rev. 1979) 712-713, Section 506." State v.Said (1994), 71 Ohio St.3d 473.
 {¶ 36} It is the responsibility of the trial court judge to determine through questioning whether the witness is capable of receiving just impressions of facts and events to accurately relate them. State v.Wilson (1952), 156 Ohio St. 525. *Page 13 
 {¶ 37} In support of his position, Appellant references a statement Gavri made at the competency hearing about receiving a book about a big red chicken from her grandmother at her birthday party. Later, when the trial court asked Gavri about other presents she received for her birthday, the girl explained the book was not a birthday present, but rather a book her grandmother had borrowed from the library.
 {¶ 38} Despite what can best be described as a minor discrepancy, a review of the transcript of the hearing demonstrates Gavri was capable of receiving just impressions of facts and events to accurately relate them. Gavri knew the date of her birthday, the type of cake she had on her most recent birthday, the names of the Disney princesses, and the names of her teachers and friends. Gavri recalled the last time she attended school, she had rainbow goldfish for a snack, which she previously stated were her favorite snacks. Gavri spoke about her trip to Disney with her father and other relatives. Gavri correctly stated her grandmother was in the hospital on the day of the hearing. Gavri could distinguish between the truth and a lie, and stated she would get in trouble if she lied.
 {¶ 39} The trial court observed Gavri's demeanor and her manner of responding. Based upon the foregoing, we find the trial court did not abuse its discretion in finding Gavri competent to testify.
 {¶ 40} Appellant's first assignment of error is overruled.
 II {¶ 41} In his second assignment of error, Appellant maintains the trial court erred in admitting hearsay statements which did not fall into any of the recognized exceptions. Specically, Appellant takes issue with the trial court's allowing Jennifer Cloud to testify *Page 14 
Gavri approached her and told the babysitter her "girl parts were hurting", because the girl did not respond to her initial questions of why she hurt and simply returned to playing. Gavri returned a few minutes later and then disclosed Nick had touched her while she was in the bathroom. The trial court ruled Gavri's statement to Cloud was admissible as an excited utterance.
 {¶ 42} As a general rule, all relevant evidence is admissible. Evid.R. 402. However, under Evid.R. 802, hearsay is not admissible unless it falls under a recognized exception under Evid.R. 803 or 804. Pursuant to Evid.R. 803(2), a hearsay statement is admissible if it is an "excited utterance." An "excited utterance" is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Further the statment must concern "some occurrence startling enough to produce a nervous excitement in the declarant," which occurrence the declarant had an opportunity to observe, and must be made "before there had been time for such nervous excitement to lose a domination over his reflective faculties" State v. Huertas (1990), 51 Ohio St.3d 22, 31, quotingPotter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus.
 {¶ 43} In State v. Duncan (1978), 53 Ohio St.2d 215, the Ohio Supreme Court emphasized, "* * * an appellate court should allow a wide discretion in the trial court to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event." Id. at 219. "[A]s the time between the event and the statement increases, so does the reluctance to find the statement an excited utterance." Id., quoting McCormick on Evidence (2 Ed.972) 706, Section 297. However, in State v. Taylor (1993), 66 Ohio St.3d 295, 303, the Ohio Supreme Court noted, "[t]here is no per *Page 15 se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought." TheTaylor Court recognized children are likely to remain in a state of nervous excitement longer than would an adult; therefore, the admission of statements of a child regarding sexual assault may be proper under the excited utterance exception even when they are made after a substantial lapse of time.
 {¶ 44} The Duncan Court set forth a four-part test to determine whether a statement qualifies as an excited utterance under Rule 803(2). The Court held testimony as to statements or declarations may be admissible under the excited utterance hearsay exception, where the trial court reasonably finds: (a) there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declarations spontaneous and unreflective, (b) the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) the declarant had an opportunity to observe personally the matters asserted in his statement or declaration. Id. at syllabus. *Page 16 
 {¶ 45} Although approximately three days had passed between the day Appellant sexually abused Gavri and her disclosure to Cloud, the record reveals the girl spontaneously uttered to Cloud her girl parts hurt, left the kitchen for a brief period, returned and again stated her girl parts hurt. In responding to Cloud's question, Gavri indicated Appellant had touched her. We agree with the Taylor Court, supra, and find the younger the declarant the longer the impact of the stress or trauma may remain. We find the trial court did not abuse its discretion in finding Gavri's statement to Cloud was an excited utterance.
 {¶ 46} Appellant's second assignment of error is overruled.
 III {¶ 47} In his third assignment of error, Appellant contends the trial court violated his right of confrontation by improperly admitting hearsay statements of the alleged victim.
 {¶ 48} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The right of confrontation requires, whenever possible, testimony and cross-examination to occur at trial. State v. Allen, 10th Dist. No. 82556, 2004-Ohio-3111, at ¶ 17.
 {¶ 49} In Crawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354,158 L.Ed.2d 177, the United States Supreme Court held:
 {¶ 50} "Where non-testimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does [Ohio v. Roberts (1980),448 U.S. 56], and as would an approach that exempted *Page 17 
such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68.
 {¶ 51} Thus, the threshold determination becomes whether the hearsay statements in question are classified as testimonial. In Horton v.Allen (C.A.1, 2004), 370 F.3d 75, the First Circuit Court of Appeals explained:
 {¶ 52} "The Crawford Court declined to provide a comprehensive definition of testimonial statements. It did, however, provide three formulations of the core class of testimonial statements.
 {¶ 53} "[1] In the first, testimonial statements consist of ex parte in-court testimony or its functional equivalent-that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine or similar pretrial statements that declarants would reasonably expect to be used prosecutorially.
 {¶ 54} "[2] The second formulation described testimonial statements as consisting of extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.
 {¶ 55} "[3] Finally, the third explained that testimonial statements are those made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.
 {¶ 56} "While the Court declined to settle on a single formulation, it noted that, whatever else the term testimonial covers, it applies to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations. These are *Page 18 
the modern abuses at which the Confrontation Clause was directed." Id. at 84 (Citations omitted).
 {¶ 57} We find Gavri's statements to Cloud are non-testimonial. The statements made by Gavri were not made in the context of in-court testimony or its equivalent. There is no suggestion such statements were elicited as part of the police investigation or in a sworn statement with intention of preserving the statement for trial or that they were a pretext or façade for state action. To the contrary, we have found the statements made to Cloud were excited utterances. Accordingly, we find the trial court did not violate Appellant's Right of Confrontation by admitting Gavri's statements.
 {¶ 58} Appellant's third assignment of error is overruled.
 IV {¶ 59} In his fourth assignment of error, Appellant asserts the trial court erred in admitting the expert testimony of Leslie Deiterich as her testimony improperly bolstered the credibility of Gavri Cox.
 {¶ 60} It is reversible error to admit testimony from a purported expert or lay witness attesting to the believability of another's statements. State v. Boston (1989), 46 Ohio St.3d 108, 128. "[I]n our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." State v. Pizzillo, 7th Dist. No. 746, 2002-Ohio-0446, citing Boston at 129. In Boston, the Ohio Supreme Court recognized "[m]ost jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse." Id. at 128. Therefore, "an expert's opinion testimony on whether there was sexual abuse *Page 19 
would aid jurors in making their decision and is, therefore, admissible pursuant to Evid.R. 702 and 704." Id.
 {¶ 61} Nevertheless, an expert cannot give an opinion of the veracity of the statements of a child declarant. Id. at syllabus. There is a difference "between expert testimony that a child witness is telling the truth and evidence which bolsters a child's credibility." State v.Stowers, 81 Ohio St.3d 260, 262, 1998-Ohio-0632. Thus, an expert can testify that a child's behavior is consistent with the behavior of other children who had been sexually abused. Id.
 {¶ 62} Appellant contends Dieterich's testimony improperly bolstered Gavri's credibility because such testimony was not based upon physical evidence, but rather only upon the history she obtained from the girl and her mother. We disagree.
 {¶ 63} A lack of physical findings does not preclude an expert from making a diagnosis of sexual abuse if the expert relies upon other facts in addition to the child's statements in reaching such diagnosis. Here, Dieterich testified she based her diagnosis upon Gavri's statement, information provided by Gavri's mother, and the medical examination she performed. Furthermore, the fact Dieterich's medical examination did not produce any physical evidence of the abuse did not discount a diagnosis of sexual abuse. As she noted, in the over one hundred cases in which she has been involved she has observed physical evidence in only 15-20 percent of the girls. Finally, our review of the record indicates Dieterich never directly commented on Gavri's credibility or the veracity of her statements.
 {¶ 64} Appellant's fourth assignment of error is overruled. *Page 20 
 V {¶ 65} In his fifth assignment of error, Appellant maintains the trial court erred in allowing expert testimony when the State failed to lay the proper foundation for the reliability of such opinion.
 {¶ 66} A trial court possesses broad discretion with respect to the admission of evidence. State v. Maurer (1984), 15 Ohio St.3d 239, 265,473 N.E.2d 768, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714,86 L.Ed.2d 728. An appellate court will not disturb evidentiary rulings absent an abuse of discretion. State v. Roberts, 156 Ohio App.3d 352,805 N.E.2d 594, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med.Bd. (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 67} Pursuant to Evid.R. 702:
 {¶ 68} "A witness may testify as an expert if all of the following apply:
 {¶ 69} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 70} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 71} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply: *Page 21 
 {¶ 72} "(1)The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 73} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 74} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 75} The Ohio Supreme Court addressed the issue of expert testimony in child sexual abuse cases in State v. Boston (1989),46 Ohio St.3d 108, 545 N.E.2d 1220. The Boston Court held: "1) pursuant to Evid.R. 702, 703, 704, and 705, the use of expert testimony in child abuse cases is "perfectly proper;" 2) the expert may offer his opinion as to whether the child is a victim of sexual abuse; and 3) the expert may not offer his opinion as to the veracity and/or credibility of the child's statements concerning the abuse." Id. at 126-29.
 {¶ 76} Further "an expert is permitted to give his opinion as to whether a child has been sexually abused where that opinion is based upon the expert's medical examination of the victim, the victim's statements to the expert, and the victim's history." State v.France (Mar. 4, 1992), 9th Dist. No. 15198, at 4. While routinely applied to doctors, we find this rule should be extended to apply to nurses. Accord, State v. Dunn, 9th Dist. No. 04CA008549, 2005-Ohio-1270, at ¶ 20.
 {¶ 77} It is undisputed Dieterich's testimony related to matters beyond the knowledge and experience possessed by lay persons, and she was qualified as an expert by her specialized knowledge, skill, experience, training, and education regarding *Page 22 
the subject matter of her testimony. As such, sections (A) and (B) of Evid.R. 702 are uncontested, leaving this Court to examine only section (C).
 {¶ 78} Evid.R. 702(C) contains two separate requirements. First, the witness' testimony must be based upon reliable scientific or other specialized information. Second, if the testimony "reports the result of a procedure, test, or experiment, the testimony is reliable" only if three factors are established. The first portion of the rule is independent of the second. The second portion of Evid.R. 702(C) only applies to testimony which "reports" the results of procedures, tests, or experiments, not opinion testimony of scientific or other specialized information. Accordingly, opinion testimony based upon medical examinations and other patient information does not fall under the second portion of Evid.R. 702(C).
 {¶ 79} Dieterich opined, based upon Gavri's history, statements Gavri made to her, information provided by Mandy Cox Lucas, and her own medical examination of Gavri, Gavri was sexually abused. Dieterich did not testify regarding any reports of results of a procedure, test, or experiment. Accordingly, the second portion of Evid.R. 702(C) did not apply to the testimony at issue.
 {¶ 80} We find Dieterich's expert opinion Gavri was the victim of sexual abuse was properly admitted. The opinion testimony did not fall within the second portion of Evid.R. 702(C); therefore, the trial court did not abuse its discretion in admitting such testimony. Further, as previously noted, an expert can testify, based upon a medical examination and other patient information, a child was the victim of sexual abuse. See, France supra.
 {¶ 81} Appellant's fifth assignment of error is overruled. *Page 23 
 VI {¶ 82} In his sixth assignment of error, Appellant challenges the trial court's guilty verdicts as against the manifest weight of the evidence.
 {¶ 83} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 84} The trial court adjudicated Appellant a delinquent child for committing one count of rape, in violation of R.C. 2907.02(A)(1)(b), which provides, in part:
 {¶ 85} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 86} "* * *
 {¶ 87} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person." *Page 24 
 {¶ 88} The trial court also adjudicated Appellant delinquent for committing one count of gross sexual imposition, in violation of R.C.2907.05(A)(4), which provides, in relevant part:
 {¶ 89} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 90} "* * *
 {¶ 91} "(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 92} Appellant submits his conviction was based upon vague, nonspecific testimony, and without physical evidence, a reversal is warranted. Appellant asserts Gavri's statements were inconsistent and unsubstantiated. Appellant refers to Gavri's testimony she did not know Appellant or remember playing in the pool at his house. Further, Gavri stated she never went to the bathroom on the day she was playing in the pool, and Appellant never entered the bathroom with her.
 {¶ 93} Appellant also points to the testimony of James Lucas who stated he observed Appellant and Gavri exiting the bathroom in Appellant's home. However, Mandy Cox Lucas refuted his testimony, stating she observed all the children coming out of the house at the same time and Lucas never went up to the sliding glass door. Tracy Brooks also refuted Lucas' testimony, indicating the only time Gavri came into her home to use the bathroom she (Tracy Brooks) assisted Gavri, and during this time, *Page 25 
Appellant remained outside with the other children. Gavri acknowledged Tracy Brooks helped her in the bathroom.
 {¶ 94} Although some seemingly inconsistent testimony was presented at the trial, there was still a substantial amount of additional evidence, as set forth in our Statement of the Facts and Case, supra, if believed, provided sufficient, competent, credible evidence from which the trial court could find Appellant guilty of rape and gross sexual imposition.
 {¶ 95} Appellant's sixth assignment of error is overruled.
 VII {¶ 96} In his final assignment of error, Appellant asserts the trial court erred in finding he was not amenable to rehabilitation in the community.
 {¶ 97} R.C. 2152.16, which governs the commitment of juveniles, provides, in pertinent part; "Juvenile Courts have broad discretion to craft dispositions for delinquent children. In re D.S.,111 Ohio St.3d 361, 363, 856 N.E.2d 921, 2006-Ohio-5851, at ¶ 6; also see In reA.L., Butler App. No. CA2005-12-520, 2006-Ohio-4329, at ¶ 57. Generally, courts of review will not disturb a trial court's choice of disposition absent an abuse of discretion. In re T.S., Franklin App. No. 06AP-1163,2007-Ohio-5085, at ¶ 28; In re T.H., Clermont App. Nos. CA2006-02-021 CA2006-02-022, 2007-Ohio-352, at ¶ 10. When reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. State ex rel. Duncan v. Chippewa Twp. Trustees
(1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe 1
(1991). 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181. *Page 26 
 {¶ 98} A juvenile court's task to determine an appropriate disposition in a delinquency case is very difficult. On one hand, a serious offense may have been committed and the court must see that justice is served. On the other hand, young offenders need to be rehabilitated. This is why Ohio law requires juvenile courts to make dispositions that are reasonably calculated to achieve the overriding purposes of delinquent juvenile disposition. See R.C. 2152.01(B). Those purposes include, inter alia, protecting the public interest, holding the delinquent accountable for his actions, restoring the victim and rehabilitating the offender. Id. at (A). Although a juvenile court is not vested with unfettered discretion to make dispositions, we will not reverse a juvenile court's judgment in this regard unless it is apparent that the court's decision is arbitrary, unreasonable and unconscionable.
 {¶ 99} In fashioning the disposition of Appellant's case, the trial court reviewed the psychological evaluations of Dr. Cecil Miller, the court appointed psychologist, and Dr. William Friday, Appellant's independent expert. The trial court also relied upon the report of T.J. Schneider, the probation officer specializing in sex offender cases. Appellant asks this Court to give greater weight to Dr. Friday's testimony and evaluation, and find the trial court abused its discretion with respect to the disposition. We cannot do so. The trial court was free to accept or reject any or all of the information contained in both psychological evaluations. The trial court obviously found Dr. Miller's recommendation more appropriate.
 {¶ 100} Appellant's final assignment of error is overruled. *Page 27 
 {¶ 101} The judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed.
Hoffman, J., Gwin, P.J. and Delaney, J. concur.
[1] James Lucas and Mandy Cox Lucas were married at the time of these events.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant. *Page 1