COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| STATE OF OHIO | : | Hon. William B. Hoffman., P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 13-CA-109 |
| DUSTIN C. HARVEY | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Licking County Court of Common Pleas, Case No. 2013CR351

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      June 9, 2014

APPEARANCES:

For Plaintiff-Appellee

KENNETH W. OSWALT
Licking County Prosecutor
PAULA M. SAWYERS
Assistant Prosecuting Attorney
20 S. Second Street, 4th Floor
Newark, OH 43055

For Defendant-Appellant

MATTHEW J. KUNSMAN
MORROW, GORDON, & BYRD, LTD.
33 W. Main Street
Box 4190
Newark, OH 43058-4190

*Gwin, P.J.*

{¶1} Defendant-appellant Dustin C. Harvey appeals his conviction entered by the Licking County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

*Facts & Procedural History*

{¶2} On June 12, 2013, an indictment was filed in the Licking County Court of Common Pleas charging appellant with two counts of rape, first degree felonies, in violation of R.C. 2907.02(A)(1)(b), two counts of rape, first degree felonies, in violation of R.C. 2907.02(A)(2), and seven counts of gross sexual imposition, felonies of the third degree, in violation of R.C. 2907.05(A)(4). Appellant entered a plea of not guilty on June 18, 2013. Appellant filed a motion to determine competency of witness E.H. and a motion to suppress appellant's statements on August 7, 2013. After the trial court held a hearing on the motions, the court found E.H. competent to testify and denied appellant's motion to suppress. The trial court also denied appellant's motion in limine to exclude the use of the term "victim" in reference to E.H.

{¶3} A jury trial commenced on November 7, 2013. The following evidence was adduced at trial. Appellant is the biological father of E.H., a child who was born on November 20, 2005. Jean Mekolites ("Mekolites"), E.H.'s maternal grandmother, testified she lived with E.H., E.H.'s mother, and appellant at 17 Conley Avenue in Newark, Ohio. Subsequently, from October 2012 until April of 2013, appellant, E.H., and E.H.'s mother resided at 51 Dougherty Circle in Newark, Ohio. Mekolites testified that after appellant left the home on approximately April 10, 2013, E.H. told her appellant had made her watch "people doing it" on the computer. A report was made to the Newark Police Department and Licking County Children's Services. Upon the

recommendation of Licking County Children's Services, Mekolites and E.H.'s mother took E.H. to Kid's Place to be evaluated. Mekolites testified that in late May of 2013 she had lunch with E.H. at school. E.H. was agitated, scared, jumping around and informed Mekolites that appellant had spanked her that morning. Mekolites stated that, prior to the police officer coming to the home to check for evidence, they cleaned E.H.'s bedroom and got E.H. a new bed at her request. Mekolites testified she never witnessed anything inappropriate between appellant and E.H. and appellant never asked her to clean E.H.'s room or buy a new mattress.

{¶4} Kelly Morrison ("Morrison"), a certified pediatric nurse practitioner with Licking Memorial Health Professionals, testified she works at Kid's Place, which is a center owned by Licking Memorial Hospital for the evaluation of children who have disclosed physical or sexual abuse. With respect to her experience in evaluating sexual abuse cases, Morrison reported that she has performed approximately 450-500 child sexual abuse examinations over the last twelve (12) years. Morrison detailed the evaluation procedure of a child who comes in with a sexual abuse allegation including acquiring medical history from the adult accompanying the child, obtaining medical history from the child him or herself, and a physical examination. Morrison examined E.H. on April 17, 2013. She testified as to the procedure she followed in conducting her evaluation of E.H. Morrison obtained the first portion of E.H.'s history from E.H.'s mother. Morrison then talked to E.H. to gather the second portion of her history, including baseline questions to determine her developmental level, determine the language E.H. utilized and the detail with which she was able to use language, and determine if E.H. had any delays.

{¶5} When Morrison inquired as to why E.H. was there, E.H. told her she was there for a check-up. Morrison utilized anatomically correct female and male drawings and asked E.H. if anyone had touched or bothered her private parts before. E.H. told her appellant had. Morrison testified that E.H. verbally and with the anatomically correct drawings told her appellant touched inside her "bosy" (E.H.'s term for the vaginal area) and in between her bottom with his penis, hands, and fingers. Morrison stated E.H. described the feeling as a "poke" and that "it hurt." Further, that E.H. told Morrison appellant placed his penis in her mouth and something came out that was "gooey and gross" that "made her choke." Following the interview, Morrison completed a physical examination of E.H. She found no physical evidence which was diagnostic. Morrison stated she was not surprised at the lack of physical evidence given the nature of the abuse reported and the timing involved because the female anatomy of a young girl is stretchy and heals very quickly. Out of the 450-500 exams Morrison completed, approximately 40% of them were conducted on females between ages 4-8 and Morrison remembers only three of those cases where there was physical evidence of abuse. Further, Morrison testified that evidence is showing about 80% to 85% of child sexual abuse cases across the county involve no physical findings. Based on her exam, Morrison testified that, to a reasonable degree of medical certainty, it was sexual abuse. On cross-examination, Morrison testified her diagnosis was made based on E.H.'s history and that if she eliminates the history there is no evidence E.H. has ever been sexually abused. Morrison's report, submitted into evidence, details the history from the accompanying adult, the history from E.H., the normal physical examination, details of the developmental screen, and Morrison's impressions.

{¶6} E.H. testified appellant touched her front private with his front private part, that appellant touched her front, back, and mouth with his private part, and when he touched his front private part to her private parts on the front and back, his front "went in." E.H. stated these incidents started while she was living with appellant at the "bug house," the house on Conley Avenue, but also happened at the other places they lived with appellant. E.H. testified when appellant put his thing in her mouth something came out in her mouth. E.H. first told Grandma Jean about these incidents because E.H. knew she was not going to get in trouble because appellant was out of the home. E.H. testified that after she told Grandma Jean and her mom about these incidents, her mom let appellant back into the home and appellant left a handprint on E.H.'s bottom when appellant spanked her because "she told on him."

{¶7} Charles Scott ("Scott") of the Newark Police Department testified he conducted an alternative light source testing for seminal stains and urine on E.H.'s bed and found no visible substances. However, Scott was not surprised he did not find any substances because he was advised E.H.'s bedroom was cleaned and the mattress was removed after the alleged incidents.

{¶8} Steven Vanoy ("Vanoy"), a detective at the Newark Police Department, interviewed appellant on May 30, 2013 and placed him under arrest during the interview. Vanoy recorded the interview with appellant (State's Exhibit 11). Appellant initially denied abusing E.H. However, Vanoy testified appellant's demeanor then changed and appellant said on two occasions he went into the bathroom and directed E.H. to rub her vagina. Subsequently, appellant stated he rubbed E.H.'s vagina approximately seven times. Appellant repeatedly denied penetrating E.H. However,

when Vanoy asked appellant whether E.H. was lying about the allegations, appellant said E.H. would not lie, but appellant could not remember anything other than the incidents he previously mentioned and did not know what happened with E.H. because he was abusing drugs every day for approximately five (5) years.

{¶9} Appellant rested after the close of appellee's case and moved for a judgment of acquittal pursuant to Ohio Criminal Rule 29 as to the four counts of rape after the close of appellee's case and prior to the submission of the case to the jury. The trial court denied appellant's motion. The jury found appellant guilty on all eleven (11) counts of the indictment. Appellant renewed his Criminal Rule 29 motion for judgment of acquittal as to the four rape counts prior to sentencing and the trial court again denied appellant's motion. The trial court sentenced appellant to a prison term of: fifteen years to life on each count one and count two of rape, six years on each count three and four of rape, and three years on each count of gross sexual imposition, counts five through eleven. The trial court ordered the sentences on all counts to run concurrently for a cumulative prison sentence of fifteen (15) years to life. The trial court advised appellant he would be required to register as a Tier III sex offender under Chapter 2950 of the Ohio Revised Code.

{¶10} Appellant now appeals and assigns the following as error:

{¶11} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING AN EXPERT WITNESS TO TESTIFY AS TO HER OPINION REGARDING THE VERACITY OF THE ALLEGED VICTIM'S DETAIL OF EVENTS.

{¶12} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING EXPERT TESTIMONY ON THE ULTIMATE ISSUE WITHOUT PROPER FOUNDATION.

{¶13} "III. THE TRIAL COURT ERRED BY NOT DECLARING A MISTRIAL WHEN SEVERAL WITNESSES FOR THE APPELLEE PROVIDED TESTIMONY THAT WAS ADVERSE, IRRELEVANT, INADMISSIBLE, AND HIGHLY PREJUDICIAL TO APPELLANT.

{¶14} "IV. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS IS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION."

I.

{¶15} Appellant first argues the trial court erred in allowing Morrison to testify regarding whether E.H.'s medical examination was consistent with E.H.'s statements concerning abuse and such testimony violated the ruling by the Ohio Supreme Court in *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989). We disagree.

{¶16} In *State v. Boston*, the Ohio Supreme Court held that in child sexual abuse cases, an expert may not give his opinion as to the child's veracity. 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989). However, this court has found that *Boston* does not apply when the child victim testifies and is subject to cross-examination or that any error is harmless when the jury hears testimony about the abuse from the victim. *State v. Curren,* 5th Dist. No. 04 CA 8, 2005-Ohio-4315; *State v. Hill*, 5th Dist. No. CT2009-0044, 2010-Ohio-4295; *State v. Fuson,* 5th Dist. Knox No. 97 CA 000023, 1998 WL 518259 (Aug. 11, 1998); *State v. Kelly*, 93 Ohio App.3d 257, 638 N.E.2d 153 (5th Dist.

1994).  In this case, E.H. testified and was subject to cross-examination.  The jury was able to witness her demeanor and judge her credibility independent of Morrison's testimony.

{¶17}  Further, Morrision did not express any opinion that E.H. was telling the truth or that her statements were believable, credible, honest, or accurate.  Morrison never commented on E.H.'s credibility or the veracity of E.H.'s statements.  The testimony related to the examination of E.H. and her medical diagnosis as a result of that examination.  Accordingly, appellant's first assignment of error is overruled.

II.

{¶18}  Appellant argues the trial court erred by allowing Morrison to testify because Morrison's opinion lacked proper foundation.  We disagree.

{¶19}  A trial court possesses broad discretion with respect to the admission of evidence and an appellate court will not disturb evidentiary rulings absent an abuse of discretion.  *State v. Roberts*, 156 Ohio App.3d 352, 805 N.E.2d 594, 2004-Ohio-962 (9th Dist.).  An abuse of discretion is more than a mere error in judgment; it is a "perversity of will, passion, prejudice, partiality, or moral delinquency."  *Pons v. Ohio State Med. Bd.* 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).  When applying an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court.  *Id.*

{¶20}  Pursuant to Evid.R. 702:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay person;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical or other specialized information.  * * *

{¶21} Appellant argues Morrison's testimony was not based upon any scientific, technical, or other specialized information and thus Evid.R. 702(C) is not met.  In *State v. Boston*, the Ohio Supreme Court held that: "1) pursuant to Evid.R. 702, 703, 704, and 705, the use of expert testimony in child abuse cases is 'perfectly proper,' 2) the expert may offer his opinion as to whether the child is a victim of sexual abuse; and 3) the expert may not offer his opinion as to the veracity and/or credibility of the child's statements concerning the abuse."  46 Ohio St.3d 108, 126-29, 545 N.E.2d 1220 (1989).

{¶22} Further, "an expert is permitted to give his opinion as to whether a child has been sexually abused where that opinion is based upon the expert's medical examination of the victim, the victim's statements to the expert, and the victim's history." *State v. France* 9th Dist. Summit No. 15198, 1992 WL 41285 (March 4, 1992); *In re Brooks*, 5th Dist. Licking No. 07-CA-74, 2008-Ohio-119.  This rule has also been extended to nurses. *In re Brooks*, 5th Dist. Licking No. 07-CA-74, 2008-Ohio-119.

**{¶23}** We find the testimony and report (State's Exhibit 3) provide an adequate foundation to admit Morrison's opinion that E.H. was abused as her opinion was based on her training and experience in evaluating approximately 450-500 children in child sexual abuse cases, her interview with E.H., the language used by E.H., her review of the anatomically correct drawings with E.H., the medical record and history of E.H., and the physical exam of E.H. As noted above, an expert can testify, based upon a medical examination and other patient information, that a child was the victim of sexual abuse. *State v. France*, 9th Dist. Summit No. 15198, 1992 WL 41285 (March 4, 1992); *In re Brooks*, 5th Dist. Licking No. 07-CA-74, 2008-Ohio-119. Morrison's opinion was based on her medical examination and E.H.'s history. The fact that Morrison's physical examination did not produce any physical evidence of the abuse was still medically significant to Morrison because Morrison stated between 80% to 85% of child sexual abuse cases across the country involve no physical findings and out of the exams Morrison completed on females between the age of 4-8 (approximately 40% of the 450-500 exams she has completed over twelve years at Kid's Place), Morrison remembers only three of those cases where there was physical evidence of abuse. Appellant's second assignment of error is overruled.

III.

**{¶24}** Appellant argues the trial court erred by not declaring a mistrial due to prejudicial testimony by Mekolites and Vanoy. In her testimony, Mekolities stated appellant was arrested for domestic violence and her daughter was a resident of a domestic violence shelter. Vanoy testified appellant had a civil protection order in place

against him and had an exchange with trial counsel during his cross-examination regarding his interview with appellant that appellant contends was prejudicial.

{¶25} The granting of a mistrial rests within the sound discretion of the trial court as it is in the best position to determine whether the situation at hand warrants such action. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." *State v. Reynolds*, 49 Ohio App.3d 27, 550 N.E.2d 490 (2nd Dist. 1988). A trial court should not grant a mistrial unless "the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 580 N.E.2d 1 (1991). This court will not second-guess a determination by a trial court not to declare a mistrial absent an abuse of discretion. *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988).

{¶26} In this case, with regards to the testimony about domestic violence and the civil protection order against appellant, appellant's trial counsel objected to the testimony and, in each instance, the trial court sustained the objection, ordered the testimony stricken, and instructed the jury to disregard the testimony. Further, in the jury instructions provided by the trial court, the trial court informed the jury that "statements or answers, if any, that were stricken from by the Court or which you were instructed to disregard are not to be considered as evidence either. Do not speculate as to why the court did sustain any objections * * *." Upon review of the record, we find it was not unreasonable, arbitrary, or unconscionable for the trial court to admonish the jury to ignore the stricken testimony rather than to grant a mistrial. See *State v. Pryor*, 5th Dist. Stark No. 2013CA00016, 2013-Ohio-5693. Curative instructions are presumed

to be an effective way to remedy errors that occur during the trial. *State v. Treesh*, 90 Ohio St.3d 460, 480, 2001-Ohio-4, 739 N.E.2d 749. The comments were isolated in the trial and were not so prejudicial that an impartial verdict could not be reached. Further, each statement was immediately followed by a short, authoritative instruction to the jury to disregard the statements that sufficed to remedy any possible error regarding the struck testimony. The jury was again reminded to disregard the statements in the jury instructions. Further, upon review of the remainder of Vanoy's testimony at issue, we find the statements were either covered by the trial court's decision on the motion to suppress or were not so prejudicial that an impartial verdict could not be reached. Accordingly, appellant's third assignment of error is overruled.

IV.

{¶27} In his fourth assignment of error, appellant contends defense counsel was ineffective when he failed to move for a mistrial after Mekolites and Vanoy provided testimony that was adverse, irrelevant, inadmissible, and prejudicial to appellant. We disagree.

{¶28} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Id.* "Prejudice from defective representation sufficient to justify a reversal of a conviction exists only where the result of the trial was unreliable or

the proceeding fundamentally unfair because of the performance of trial counsel." *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965.

**{¶29}** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

**{¶30}** In this case, trial counsel's performance did not fall below an objective standard of reasonable representation involving a substantial violation of any of his essential duties to appellant. Trial counsel objected to the testimony at issue and moved for acquittal pursuant to Crim.R. 29 at the close of appellee's case, at the close of all evidence, and during the sentencing hearing. The trial court provided the jury with curative instructions on all parts of the testimony appellant contends was adverse, inadmissible, or prejudicial and further instructed the jury not to consider the stricken testimony. As discussed above, it was not unreasonable, arbitrary, or unconscionable for the trial court to admonish the jury to ignore the stricken testimony rather than to grant a mistrial and the curative instructions provided were an effective way to remedy any errors that occurred during the testimony at issue. Accordingly, appellant's fourth assignment of error is overruled.

{¶31} Based upon the foregoing, appellant's assignments of errors are overruled and the judgment of the Licking County Common Pleas Court is affirmed.

By Gwin, J.,

Hoffman, P.J., and

Wise, J., concur